427 F.2d 1402
 Sydney ARCHER, Appellant,
v.
Maxwell GORDON and John J. Lafferty, Appellees,
v.
Kuhrt FRETER and Karl Zeile, Appellees.
Maxwell GORDON and John J. Lafferty, Appellants,
v.
Sydney ARCHER, Appellee,
v.
Kuhrt FRETER and Karl Zeile, Appellees.
 Patent Appeal No. 8116.
 Patent Appeal No. 8117.
 United States Court of Customs and Patent Appeals.
 July 9, 1970.
 Rehearing Denied October 8, 1970.
 
 Thomas F. Reddy, Jr., J. Phillip Anderegg, New York City, Pennie, Edmonds, Morton, Taylor & Adams, New York City, attorneys of record, for Archer. Laurence & Laurence, Washington, D. C., of counsel.
 George J. Harding, 3rd, Philadelphia, Pa., for Gordon and Lafferty.
 Nelson Littell, Jr., New York City, for Freter and Zeile.
 Before RICH, ALMOND, BALDWIN and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.
 RICH, Judge.
 
 
 1
 These combined appeals are from the decision of the Board of Patent Interferences[1] awarding priority to Freter and Zeile (hereinafter "Freter") in a three-party interference, No. 91,986, involving Freter application serial No. 62,099, filed October 12, 1960, entitled "Derivatives of 6, 7-Benzomorphan"; Gordon and Lafferty (hereinafter "Gordon") application serial No. 13,982 filed March 10, 1960, entitled "Novel N-Allyl and N-Propargyl Benzmorphan Derivatives"; and Archer application serial No. 72,844 filed December 1, 1960, entitled "Compounds and Preparation Thereof."[2] The compounds of the counts
 
 
 2
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 3
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE are N-allyl and N-propargyl 5, 9-dimethyl-6, 7-benzomorphan derivatives. Count 1 is directed to 2'-hydroxy compounds while count 2 is generic both to the 2'-hydroxy compounds and to 2'-methoxy compounds. The compounds of the counts are disclosed by each of the parties as being useful as antagonists[3] of analgesics (narcotics).
 
 
 Summary of the Case
 
 
 4
 The sole issue in this interference is priority of invention. Since the applications of all three parties are copending, the applicable burden of proof on the junior and intermediate parties is by a preponderance of the evidence.
 
 
 5
 Freter took no testimony, and relied on a German priority date (35 U.S.C. § 119) of October 16, 1959. It is not disputed that Freter was properly accorded the benefit of that date and therefore made senior party. Thus October 16, 1959,[4] is the date which must be overcome by either Gordon or Archer to prevail over Freter.
 
 
 6
 Gordon and Archer each filed a main brief and a reply brief and each was represented at oral argument. Freter, however, has relied solely on the opinion and decision of the board.
 
 
 The Case for Gordon
 
 
 7
 Gordon took extensive testimony and submitted numerous documentary exhibits in an attempt to prove (1) a reduction to practice of 2'-methoxy-5, 9-dimethyl-2-allyl-6, 7-benzomorphan prior to October 16 and (2) conception of 2'-hydroxy-5, 9-dimethyl-2-allyl-6, 7-benzomorphan prior to October 16 coupled by diligence with both actual and constructive reductions to practice after that date. The structures of these two compounds are represented by the formula in count 2, supra, when R is "allyl" and R' is "methyl" and "hydrogen," respectively.
 
 
 8
 The board held that a reduction to practice of the 2'-methoxy compound had not been established, and Gordon does not seek to have us review that holding. As for the 2'-hydroxy compound,[5] the board held that Gordon's diligence towards its reduction to practice did not begin until October 22, after the critical date.
 
 
 9
 The record shows that probably as early as May of 1959, Gordon had conceived of the structure of the 2'-hydroxy compound, had conceived of its usefulness as an analgesic antagonist, and had conceived of two synthetic routes for producing it. These two routes, which involve the use of the same starting material, are represented by the following schematic, italicization indicating the moiety introduced by each process step:
 
 
 10
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 11
 At the time these two routes were proposed, success with the three-step process (first route) was thought to be more likely. Preparation of the 2'-methoxy-2allyl intermediate in this process was carried out on June 23. However, instead of using the compound as an intermediate to prepare the 2'-hydroxy-2-allyl compound, as originally intended, it was submitted for "biological testing." Additional quantities of the 2'-methoxy-2-allyl compound were produced on August 27 and September 22, and on a third date between September 22 and October 22. Eventually, all of these preparations were combined and a portion was used October 22 in the unsuccessful attempt to produce the 2'-hydroxy-2-allyl compound by "ether cleavage," according to the first route, supra. On that same day, October 22, the second proposed route ("direct allylation") was successfully practiced.
 
 
 12
 Gordon argues that the additional quantities of 2'-methoxy compound produced between June and October must have been produced so that they could be used to prepare the 2'-hydroxy compound, and argues that the time spent making these additional quantities should be counted as diligence towards a reduction to practice of the 2'-hydroxy compound.
 
 
 13
 We agree with the board's conclusion that Gordon's diligence towards reduction to practice of the 2'-hydroxy compound began no earlier than October 22. The record is silent as to why the additional amounts of the 2'-methoxy compound were prepared. The inference most reasonably to be drawn from the record is that the preparations were for the purpose of carrying out further pharmacological testing of the 2'-methoxy compound rather than for the purpose of using it as an intermediate. Such being the case, the activity in question cannot be considered diligence towards a reduction to practice of the 2'-hydroxy compound.
 
 
 The Case for Archer
 
 
 14
 Archer asserts a conception of 2'-hydroxy-5, 9-dimethyl-2-allyl-6, 7-benzomorphan (the same 2'-hydroxy compound referred to above) on October 8 coupled by diligence with an actual reduction to practice after October 16.
 
 
 15
 Archer alleges that he first conceived of the 2'-hydroxy-2-allyl compound and its usefulness as an analgesic antagonist in January 1959. Although Gordon contests this, we will assume, arguendo, that Archer did have a complete conception of the compound at that time. There is no allegation that anything further was done with respect to that compound until October 8. There is testimony that on that date, at a meeting attended by Moore (Director of Product Development for Sterling Drug), Archer, and Suter (Archer's supervisor), among others, Moore directed Archer to prepare and test the compound. Suter, who presided over and took the minutes of the meeting, testified that Archer agreed to prepare the compound and that Archer mentioned the possibility of using phenazocine (2'-hydroxy-5, 9-dimethyl-2-phenethyl-6, 7-benzomorphan) as the starting material. Mayor, a chemist who had prepared phenazocine on a number of previous occasions in accordance with instructions furnished by Homiller, his superior, began the preparation of a new batch on October 8, the date of the meeting. This preparation and chemical analysis of the product was completed by October 23.
 
 
 16
 On November 11, Albertson, a chemist working under Archer, obtained from storage the batch of phenazocine produced by Mayor and attempted to prepare the 2'-hydroxy-2-allyl compound in issue by first removing the phenethyl group from phenazocine and then allylating the resulting product; this route proved unsuccessful. On November 20 Albertson began to prepare the compound in issue using different starting materials and a different synthesis route. The synthesis was successfully completed on December 2 and the product was submitted for analgesic antagonistic activity studies on December 3.
 
 
 17
 Archer contends that the record establishes the work of Mayor beginning on October 8 as being in response to the decision allegedly made at the meeting held on that date and that such work therefore constitutes diligence from immediately prior to the critical date of October 16. With respect to this contention, the board reached the following conclusions, with which we entirely agree:
 
 
 18
 * * * the record does not clearly establish a proper relationship between the work of Mayor and that of Albertson on November 11. The testimony is not found to be consistent with the assertion that there was any deliberate activity on October 8 purposely directed to the ultimate synthesis of [the 2'-hydroxy-2-allyl compound] * * *. Archer himself indicated in his testimony that work did not begin until after October 8 * *. In fact there is nothing in the record which would establish that Mayor's work was, at the time it was performed, in any way directly related to the alleged reduction to practice. The record establishes that Mayor was engaged in testing a new process for producing phenazocine in the Pilot Laboratory * * *. Mayor testified that he received his instructions from Homiller. While Homiller testified * * * that Suter in 1959 requested that the pilot plant produce phenazocine, there is no indication when in 1959 Suter made the request or that such a request was made as a result of the October 8 meeting. Since Mayor was regularly involved in synthesizing phenazocine prior to October 8 and since he began to synthesize a batch on October 8, and in view of Archer's testimony that work on the synthesis of [the 2'-hydroxy-2-allyl compound] * * * began subsequent to the October 8 meeting, it would not appear that Mayor's work * * * was a result of any decision made at [the] October 8 meeting by either Moore or Archer.
 
 
 19
 Moreover, on this record we have doubts, as did the board, that the decision to prepare the compound in issue was made at the October 8 meeting as alleged. There is no documentary evidence which, in our opinion, even tends to support the testimony that the decision was made on that date. In fact, the minutes of the meeting, which set forth in considerable detail both past and future work discussed, make no reference whatsoever to the purportedly extensive discussion of the 2'-hydroxy-2-allyl compound. Considering all the testimony and evidence of record, we think it as likely, if not more likely, that the decision was made at a November 6 meeting about which Dr. Moore testified. We thus are not convinced that Archer's diligence began prior to October 16, the critical date.
 
 
 Summary
 
 
 20
 Neither Gordon nor Archer has proved diligence from immediately prior to Freter's date of October 16, 1959. Accordingly, the decision of the board awarding priority to Freter is affirmed.
 
 
 21
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Consisting of Casanova, Jr., Bailey, and Gaston, Examiners of Interferences, opinion by Bailey
 
 
 [2]
 The real parties in interest are C. H. Boehringer Sohn, assignee of Freter; Smith, Kline & French Labratories, assignee of Gordon; and Sterling Drug, Inc., assignee of Archer
 
 
 [3]
 Dorland's Illustrated Medical Dictionary (23d ed. 1957), provides the following definition:
 antagonist * * * 2. An agent, such as a remedy, which tends to nullify the action of another agent. * * *
 
 
 [4]
 Hereinafter, all dates are in 1959 unless otherwise indicated
 
 
 [5]
 Where necessary to clearly distinguish from other compounds, the 2'-methoxy and 2'-hydroxy compounds are referred to as the "2'-methoxy-2-allyl" and "2'-hydroxy-2-allyl" compounds, respectively